UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

November 21, 2011

LETTER TO COUNSEL

      RE:    <u>April Renee Jackson v. Commissioner, Social Security Administration</u>;
                  Civil No. SAG-10-3589

Dear Counsel:

      On December 23, 2010, the Plaintiff, April Renee Jackson, petitioned this Court to review the Social Security Administration's final decision to deny her claim for Disability Insurance Benefits ("DIB") (Paper No. 1). I have considered the parties' cross-motions for summary judgment (Paper Nos. 13 and 16). I find that no hearing is necessary. Local Rule 105.6. This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3). *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny both motions for summary judgment, reverse the agency's decision, and remand for further proceedings in this matter. This letter explains my rationale.

      Ms. Jackson's application was based upon her claim of disability due to a neuroma on her left leg/foot, asthma, and congestive heart failure. (Tr. 137). She filed her claim on July 29, 2008, alleging that she became disabled on August 10, 2007. (Tr. 105-109). Her claim was denied on October 16, 2008. (Tr. 67). However, her claim was subsequently granted on reconsideration, with a disability date of March 6, 2009 (Ms. Jackson's fiftieth birthday). (Tr. 74). Ms. Jackson still proceeded to a hearing before an ALJ, because she contested the denial of benefits from August 10, 2007 through March 6, 2009. (Tr. 50). Following the hearing, the ALJ determined that Ms. Jackson had not been disabled at any time from 2007 through the date of the hearing. (Tr. 23). The Appeals Council denied Ms. Jackson's request for review (Tr. 1-5), so the decision of the Administrative Law Judge ("ALJ") constitutes the final, reviewable decision of the agency.

      Ms. Jackson presents three arguments on appeal. First, she argues that the ALJ failed to follow the treating physician rule by according proper weight to her treating physicians' opinions. Second, she contends that that ALJ erred in evaluating her credibility. Third, she argues that the ALJ relied upon flawed vocational expert ("VE") testimony. Though Ms. Jackson's second argument lacks merit, this Court agrees with her first and third arguments to

the extent that the ALJ should have further investigated the opinion of one treating physician, Dr. Rano, regarding the need for Ms. Jackson to elevate her foot above her heart during work hours.[1] The results of that investigation were necessary to pose a proper hypothetical to the VE.

The treating physician at issue, Dr. Rano, completed a Lower Extremities Impairment Questionnaire in April, 2009. (Tr. 476-483). Dr. Rano indicated that Ms. Jackson could sit for eight hours and stand/walk for two hours in a sustained work environment. (Tr. 479). He noted no reason that she could not sit continuously in a work setting, although he did note that she could not stand/walk continuously in a work setting (Tr. 479). Dr. Rano suggested that the limitations described in his opinion began in November, 2007 (approximately three months after Plaintiff alleges her disability began). (Tr. 482). The critical section of Dr. Rano's questionnaire read as follows, in relevant part:

> Q. Does [sic] patient's legs need to be elevated?
> A. If pain, yes. [Left leg].
> Q. How long?
> A. Until pain resolves.
> Q. How frequently?
> A. If needed.
> Q. To what degree of inclination?
> A. Above heart.
> Q. Medical reasons?
> A. Swelling at end of day.

(Tr. 480).

The ALJ determined a residual functional capacity ("RFC") for Ms. Jackson which included, in relevant part, "limited to alternating standing for 30 minutes and sitting for 30 minutes consistently eight hours a day, five days per week . . . jobs that would allow her to elevate her left foot on occasion to non-weightbearing." (Tr. 16). At the hearing in this matter, the VE testified that several light and sedentary jobs would be appropriate for a person with Ms. Jackson's RFC as determined by the ALJ. All of those jobs involved continuous sitting during the workday, so each job would permit elevation of Ms. Jackson's leg to non-weightbearing. (Tr. 59). However, the VE testified that if Ms. Jackson had to elevate her leg over her heart instead of just off the floor, "there would be no work on a sustained basis." (Tr. 60).

The ALJ failed to clarify Dr. Rano's ambiguous opinion about whether elevation above heart level would be required during work hours for pain, or only at the end of the day for

---

[1] Plaintiff also suggests that the ALJ rejected "opinions" from treating physician Dr. Gannon. This argument is at least flawed, if not intentionally misleading. Dr. Gannon did not provide any RFC evaluation or other formal opinion. The alleged "opinions" cited in Plaintiff's motion [Paper No. 13 at 15] are not statements made by Dr. Gannon at all. Dr. Gannon's treatment notes state that Ms. Jackson reported that she could not stand, walk, or work when she provided Dr. Gannon's office her disability paperwork to fill out. Dr. Gannon did not express any opinion on that statement at all in his notes. (TR. 603). In addition, Dr. Gannon never opined that Ms. Jackson needed to keep her foot elevated, as alleged in Plaintiff's Motion. [Paper 13 at 15]. Dr. Gannon merely advised Plaintiff "to elevate the foot at rest," which would be consistent with the ALJ's RFC. (Tr. 611). This Court therefore rejects any argument that the ALJ improperly considered Dr. Gannon's reports.

swelling. According to the VE, that distinction is determinative as to whether any work would be available to Ms. Jackson. "Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits ..." *Sims v. Apfel*, 530 U.S. 103, 111, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000). In this case, while the ALJ considered Dr. Rano's opinion, the ALJ gave portions of his opinion "little weight" and gave "more weight" to other portions. (Tr. 21). The ALJ incorporated into his RFC a requirement that prospective jobs "allow [Plaintiff] to elevate her left foot on occasion to non-weightbearing." (Tr. 16). However, the ALJ did not make reference to Dr. Rano's suggestion that her foot might need to be elevated above heart level, and did not provide any basis for rejecting that limitation in the RFC, if in fact that limitation was intended to apply during work hours.

This Court does not express any opinion as to whether the ALJ's ultimate decision on the merits of Ms. Jackson's claim was correct or incorrect. However, to fully investigate the facts and to be able to understand the import of the VE's testimony regarding elevation, the ALJ needs to clarify Dr. Rano's opinion regarding the need for elevation above heart level. On remand, the ALJ should also clarify the basis for the alternating sit/stand option in his RFC, which exceeded the total standing time recommended in Dr. Rano's opinion and possibly exceeded the total standing time recommended in the opinion of Dr. Rudin, the state agency examiner who received "significant weight" in the ALJ's evaluation of the evidence. (Tr. 21). Dr. Rudin noted that Ms. Jackson could stand and/or walk (with normal breaks) for "at least 2 hours in an 8-hour workday," but he did not check off the next-highest level, "about 6 hours in an 8-hour workday." (Tr. 469). The ALJ's alternating sit/stand RFC would involve a total of four hours of standing, and it is unclear whether Dr. Rudin believes that four hours of standing per day falls within Ms. Jackson's capacity. This Court notes, however, that despite the sit/stand option in the ALJ's RFC, the VE did not suggest any sit/stand positions and limited the available work options to sitting-only positions.

Finally, with respect to Ms. Jackson's second argument, the ALJ specifically considered Ms. Jackson's testimony and found that her "statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 18). The ALJ relied on several pieces of objective evidence: the contrast between Ms. Jackson's testimony about her ability to walk and her shoe choices at her medical appointments, (Tr. 18), her hobbies and interests including praise dancing (Tr. 18), the inconsistencies between Dr. Gannon's findings on physical examinations and Ms. Jackson's subjective reports of pain (Tr. 19-20), and inconsistencies between Ms. Jackson's testimony about her daily activities and a disabling level of asthma, foot problems, and congestive heart failure. (Tr. 20). The Fourth Circuit has stated that while "a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment. " *Craig* 76 F.3d at 595. The ALJ properly cited to the objective evidence listed above in support of his credibility determination. Thus, the ALJ's credibility finding was based on substantial evidence and will stand, subject only to any alterations the ALJ deems appropriate on remand.

For the reasons set forth herein, Plaintiff's motion for summary judgment (Paper No. 13) will be **DENIED** and Defendant's motion for summary judgment (Paper No. 16) will be **DENIED**. The decision of the ALJ is reversed and remanded for further consideration in accordance with this opinion. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge